**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

CANAL INDEMNITY COMPANY                                             PLAINTIFF

VERSUS                                          CIVIL ACTION NO. 2:07cv351KS-MTP

TAMMY L. DAUMA, ET AL                                              DEFENDANTS


## MEMORANDUM OPINION AND ORDER

This matter is before the court on a Motion for Summary Judgment **[#110]** filed

on behalf of the plaintiff, Canal Indemnity Company ("Canal").  The court, having

reviewed the motion, the response, the pleadings and exhibits on file, the briefs of

counsel, the authorities cited, and being otherwise fully advised in the premises finds

that the motion is well taken and should be granted.  The court specifically finds as

follows:


## FACTUAL BACKGROUND

Canal filed this interpleader action and suit for declaratory relief against a number

of defendants regarding a motor vehicle accident which occurred on July 20, 2006.  The

collision involved a U.S. military Humvee driven by the Sergeant First Class George

Dauma, Jr. and a tractor-trailer owned by defendant Cox and operated by Rodney

Brown.  Also in the Humvee were Staff Sgt. William Schultz, Second Lt. Pritpal Aujla,

and Staff Sgt. William Brown.  These four were active-duty Alaska Army National

Guardsmen assigned to the Camp Shelby Joint Forces Training Center.  The collision

occurred on Highway 98 near New Augusta, Mississippi. As a result of this collision, Staff Sgt. Brown and Sgt. First Class Dauma were killed. Staff Sgt. Schultz and Second Lt. Aujla received various injuries.

On December 12, 2005, Canal had issued Basic Automobile Liability Policy No. L045430 with Mike Cox d/b/a Cox Cattle Co. as the name insured. The policy was effective from December 12, 2005 until December 12, 2006. The policy provided combined single limits liability coverage for bodily injury and property damage in the amount of $750,000 for each occurrence.

As a result of the accident, the Guardsmen or their estates filed various lawsuits in the Circuit Court of Perry County, Mississippi against Cox Cattle and Rodney Brown. These lawsuits seek damages in an amount well over $750,000. At least two of the suits (Aujla and Schultz) were removed here and, ultimately, remanded. Canal is currently defending Cox Cattle and Rodney Brown in these lawsuits.

On December 11, 2007, Canal filed this statutory interpleader action in this court. On December 18, 2007, this court entered and order authorizing Canal to deposit its entire policy limits of $750,000 into the Registry of this court. One year later, on December 18, 2008, this court entered an order authorizing the disbursement of all of the interpled funds to the Schultz, Dauma, Brown and Aujla claimants pursuant to an agreement among the claimants as to how those funds would be divided.

On February 14, 2008, Rodney Brown pled guilty to two counts of DUI causing death and two counts of mayhem in the Perry County Circuit Court. He was sentenced to serve sixty (60) years in the custody of the Mississippi Department of Corrections.

On October 28, 2008, Cox Cattle filed for bankruptcy protection in the United

States Bankruptcy Court for the Eastern District of Texas, Tyler Division.  Those

proceedings are still pending.  On January 29, 2009, the Bankruptcy Court in Tyler

partially lifted the automatic stay for a period of ninety (90) days to allow limited

discovery in the underlying state court proceedings in Mississippi.  That ninety days has

now expired.  Canal now asserts that it has fulfilled all of its obligations under its policy

and seeks to be discharged from any further liability for indemnity or duty to defend.


## STANDARD OF REVIEW

The Federal Rules of Civil Procedure, Rule 56(c) authorizes summary judgment

where "the pleadings, depositions, answers to interrogatories and admissions on file,

together with affidavits, if any, show that there is no genuine dispute as to any material

fact and that the moving party is entitled to judgment as a matter of law."  *Celotex*

*Corporation v. Catrett*, 477 U.S. 317, 322, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986).  The

existence of a material question of fact is itself a question of law that the district court is

bound to consider before granting summary judgment.  *John v. State of La. (Bd. of T.*

*for State C. & U.)*, 757 F.2d 698, 712 (5th Cir. 1985).

A Judge's function at the summary judgment stage is not himself to weigh the

evidence and determine the truth of the matter, but to determine whether there is a

genuine issue for trial.  There is no issue for trial unless there is sufficient evidence

favoring the non-moving party for a jury to return a verdict for that party.  If the evidence

is merely colorable, or is not significantly probative, summary judgment is appropriate.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 91 L.Ed.2d 202, 106 S.Ct. 2505 (1986).

Although Rule 56 is peculiarly adapted to the disposition of legal questions, it is

not limited to that role.  *Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986).  "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material."  *Id.*  "With regard to 'materiality', only those disputes over facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment."  *Phillips Oil Company v. OKC Corporation*, 812 F.2d 265, 272 (5th Cir. 1987).  Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . all other contested issues of fact are rendered immaterial.  *See Celotex*, 477 U.S. at 323, 106 S.Ct at 2552."  *Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992).  In making its determinations of fact on a motion for summary judgment, the Court must view the evidence submitted by the parties in a light most favorable to the non-moving party.  *McPherson v. Rankin*, 736 F.2d 175, 178 (5th Cir. 1984).

The moving party has the duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on his motion.  *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).  The movant accomplishes this by informing the court of the basis of its motion, and by identifying portions of the record which highlight the absence of genuine factual issues.  *Topalia*n, 954 F.2d at 1131.

"Rule 56 contemplates a shifting burden:  the nonmovant is under no obligation to respond unless the movant discharges [its] initial burden of demonstrating [entitlement to summary judgment]."  *John*, 757 F.2d at 708.  "Summary judgment cannot be supported solely on the ground that [plaintiff] failed to respond to defendants'

motion for summary judgment," even in light of a Local Rule of the court mandating such for failure to respond to an opposed motion. *Id.* at 709.

However, once a properly supported motion for summary judgment is presented, the nonmoving party must rebut with "significant probative" evidence. *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1978). In other words, "the nonmoving litigant is required to bring forward 'significant probative evidence' demonstrating the existence of a triable issue of fact." *In Re Municipal Bond Reporting Antitrust Lit.* , 672 F.2d 436, 440 (5th Cir. 1982). To defend against a proper summary judgment motion, one may not rely on mere denial of material facts nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. The nonmoving party's response, by affidavit or otherwise, must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. *See also, Union Planters Nat. Leasing v. Woods*, 687 F.2d at 119.

While generally "'[t]he burden to discover a genuine issue of fact is not on [the] court,' (*Topalian* 954 F.2d at 1137), 'Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention-the court must consider both before granting a summary judgment.'" *John*, 757 F.2d at 712 (quoting *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980)).


## CHOICE OF LAW ANALYSIS

In a diversity action this court is bound to apply the law of the forum state. *Erie Railroad Co. v Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This

includes Mississippi's conflict-of-law rules. *Klaxon v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Since Mississippi is the forum state for this lawsuit, Mississippi's choice of law rules apply. *Hartford Underwriters Ins. Co. v. Foundation Health Services, Inc.*, 534 F.3d 588, 593 (5th Cir. 2008).

The question of choice of law is and always has been one for the court in the first instance. *See, Trijec Properties, Inc. v. U. S. Mineral Products*, 974 F.2d 602 (5th Cir. 1992); and *Walls v. General Motors, Inc.*, 906 F.2d 143 (5th Cir. 1990). If and only if there is a genuine issue of material fact regarding the application of the appropriate choice of law rules to the particular facts of the case is the issue properly submitted to the trier of fact. In this case, there is no such dispute.

In determining substantive choice of law questions, Mississippi relies on the "center of gravity"/"most significant relationship" test as set forth in the Restatement (Second) of Conflicts of Law. *See, Craig v. Columbus Compress & Warehouse Co.*, 210 So.2d 645, 649 (Miss. 1968); and *Mitchell v. Craft*, 211 So.2d 509 (Miss. 1968). Mississippi courts apply the principles set out in Restatement (Second) of Conflicts of Laws § 188 to choice of laws disputes rooted in contract. *Powe v. Roy Anderson Constr. Co.*, 910 So. 2d 1197, 1202 (Miss. Ct. App. 2006)(noting that § 188 sets forth principles to be applied in contract actions generally). Section 188 provides that:

> In the absence of an effective choice of law by the parties . . . the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

*Id.* These contacts are evaluated according to their relative importance with respect to

the particular legal issue in dispute.  *Powe*, 910 So. 2d at 1202.

In this case, the place of contracting and the place of negotiation of the subject Canal policy was in Texas.   Mike Cox d/b/a Coss Cattle Co. has his place of business in Texas and is involved in interstate trucking.  Therefore, the place of performance would be nationwide.  The accident occurred in Mississippi and involved parties from various states, including Alaska, Hawaii, Texas and Alabama.  Under this set of factual circumstances, the court deems the State of Texas to have the most substantial contacts and thus it appears that the court should apply Texas law to the contractual issues presented.

However, after applying the § 188 factors, the court must consider Restatement (Second) of Conflict of Laws §6.  Section 6 is ancillary to the court's determination of whether Texas has a more significant relationship to the occurrence in question.  *See Goodwin, supra.* That section provides:

> (1)  A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2)  When there is no such directive, the factors relevant to the choice of the applicable rule of law include:
>
>> (a)  the needs of the interstate and international systems,
>>
>> (b)  the relevant policies of the forum,
>>
>> (c)  the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>>
>> (d)  the protection of justified expectations,
>>
>> (e)  the basic policies underlying the particular field of law,
>>
>> (f)  certainty, predictability and uniformity of result, and

(g)  ease in the determination and application of the law to
be applied.

Restatement (Second) of Conflicts of Law §6(2) (1971).

Applying these factors, the court finds that Texas is indeed the state with the

most significant interest in determining the issues presented in interpreting this Texas

insurance policy.  Nor does applying Texas law run afoul of the policies advanced by

Mississippi.  Thus, pursuant to the principals set out in Restatement (Second) of Conflict

of Laws §188 and the ancillary considerations expressed in § 6, the court concludes

that Texas law should be applied in interpreting the insurance policy issued by Canal to

Cox.


## RULES OF CONSTRUCTION

Under Texas law, familiar rules of contract construction apply to insurance

policies.  *Balandran v. Safeco Ins. Co. of America*, 972 S.W.2d 738, 740-41 (Tex.

1998).  Thus, when interpreting an insurance contract, the court is to ascertain the true

intent of the parties as expressed in the policy itself.  *Kelley-Coppedge, Inc. v.

Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998).  The unambiguous terms of the

contract are to be given their plain, ordinary, and generally accepted meaning.  *Heritage

Res., Inc. v. National Bank*, 939 S.W.2d 118, 121 (Tex. 1996).  If, however, the parties

take conflicting views of coverage, "neither conflicting expectations nor disputation is

sufficient to create an ambiguity."  *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134

(Tex. 1994).  Nor is "one phrase, sentence, or section [to] be isolated from its setting

and considered apart from the other provisions."  *Id.*

## ANALYSIS

An interpleader is a suit in equity. *First National Bank of Ft. Worth v. United States,* 633 F.2d 1168 (5th Cir. 1981). Generally stated, the purpose of an interpleader action is to protect a stakeholder, most typically an insurance company, from liability when faced with the threat of multiple inconsistent claims to a single fund by allowing the stakeholder to tender the contested funds to the court in lieu of defending against multiple possible lawsuits. *Tittle v. Enron Corp.*, 463 F.3d 410 (5th Cir. 2006). In essence, the interpleader action allows the stakeholder to pay the money in dispute into court, withdraw from the proceeding, and leave the claimants to litigate between themselves their entitlement to the funds. *Hussain v. Boston Old Colony Ins. Co.*, 311 F.3d 623 (5th Cir. 2002).

An interpleader action generally proceeds in two stages. *Mid-America Indemnity Company v. McMahan*, 666 F.Supp. 926, 928 (S.D. Miss. 1987). First, the court determines the right of a party invoking the interpleader to compel the claimants to litigate their claims to the fund in one proceeding. *Id.* Once the court determines the interpleader is proper, the court may discharge the interpleading plaintiff if it is disinterested and seeks no part of the funds. *Southtrust Bank of Florida N.A. v. Wilson*, 971 F.Supp. 539, 542 (M.D. Fla. 1997); 28 U.S.C. § 2361. In the second stage of the interpleader action, the court determines the respective rights of the various claimants to the fund. *Mid-Ameirca*, 666 F.Supp. at 928.

The Canal policy's declaration page provides that the liability limit for any one accident is $750,000. In regard to coverage, the Policy contains the following:

**IV. LIMITS OF LIABILITY:**          Regardless of the number of (1) **insureds**

under this policy, (2) persons or organizations who sustain **bodily injury** or **property damage**, (3) claims made or suits brought on account of **bodily injury** or **property damage** or (4) **automobiles** to which this policy applies, the company's liability is limited as follows:

**Coverage A –** The limit of **bodily injury** liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, because of **bodily injury** sustained by one person as the result of any on **occurrence**; but subject to the above provision respecting "each person", the total liability of the company for all damages for care and loss of service, because of **bodily injury** sustained by two or more persons as the result of any one **occurrence** shall not exceed the limit of **bodily injury** liability stated in the declarations as applicable to "each **occurrence**".

Section A, Basic Automobile Liability Policy, Page 2, Paragraph IV.

Thus, it is undisputed that the clear, unambiguous language of the Canal policy limits it total liability for the subject accident to $750,000. Additionally, the Policy contains an MCS-90 endorsement which provides: "This insurance is primary and the company shall not be liable for amounts in excess of $750,000 for each accident."

Canal's liability limits of $750,000 was deposited with the Clerk of this court pursuant to an Order dated December 18, 2007. Pursuant to an agreement of the parties, the full amount was disbursed to the claimants by Order of December 18, 2008. The defendants (claimants) do not dispute that Canal has paid it limits of liability. Thus, because Canal has paid its maximum liability limits under the subject Policy, the court finds that it is now entitled to a discharge from any further duty of indemnification, and it will be so ordered.

Canal also seeks to be discharged from any further duty to defend Cox Cattle and/or Rodney Brown in the state court actions. To this request, the defendants (claimants), or at least some of them, do object. In that regard, the Canal Policy

provides:

> The company will pay on behalf of the **insured** all sums which the **insured** shall become legally obligated to pay as damages because of

> **bodily injury or property damage**

> to which this insurance applies, caused by an **occurrence** and arising out of the ownership, maintenance or use; including loading and unloading for the purposes stated as applicable thereto in the declarations, of an **owned automobile** or a **temporary substitute automobile**, and the company shall have the right and duty to defend any suit against the **insured** seeking damages on account of such **bodily injury** or **property damage**, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Section A, Basic Automobile Liability Policy, Page 1, Paragraph I.

Because Canal has paid its liability limits under the Policy, and its duty to indemnify has been satisfied, it now seeks, based on the above policy language, to have the court declare that its duty to defend its insured has been fulfilled and to be discharged from any further such duty.

The plaintiff candidly admits that no Texas case has specifically held that an insurance company's filing of an interpleader action and depositing its policy limits into the registry of the court with a subsequent disbursement of those funds by agreement of the claimants extinguishes the company's duty to defend.  However, Canal cites several Texas cases which address related issues and seem to suggest that such actions would indeed terminate a duty to defend.

For instance, the Texas Court of Appeals addressed an insurer's duty to defend after exhaustion of it policy's liability limits in *American States Insurance v. Arnold*, 930

S.W.2d 196 (Tex. App. 1996). The policy at issue contained a provision which stated that the insurer's duty to defend ended upon exhaustion of policy limits. The *Arnold* court examined the contract language and concluded that it indeed "manifests the parties' intent to limit the duty to defend to the time before policy limits are exhausted." *Id.* at 201 (citing *Forbau*, 876 S.W.2d at 133). As a result, the insurer was relieved of its duty to defend.

In *Baucum v. Great American Insurance*, 370 S.W.2d 863 (Tex. 1963), the Texas Supreme Court held that the mere delivery of a check to a court clerk did not relieve the insurer of its duty to defend. The holding was based on the court's finding that the check was not validly tendered to the court clerk because it was not an unconditional relinquishment of the proceeds as it contained a requirement that the insured execute a release to receive the funds. *Id.* at 865-66. The Texas Court did note that such an insurer would have been discharged from it's obligations under the policy by depositing the money into the registry of the court without such limitations. *Id.*

Relying on the holding in *Baucum*, a federal district court in *Texas Employers Insurance v. Underwriting Members of Lloyds*, 836 F.Supp. 398 (S.D. Tex. 1993), discussed an insurer's duty to defend under Texas law after exhaustion of policy limits. The *Texas Employers* court determined that an insurer does not exhaust its policy limits by merely offering it to a claimant. *Id.* at 409. The district court held that there must be a valid tender of the limits which is an unconditional offer, and actual production of the funds, by a debtor to pay a sum of money not less than the amount due on the obligation. *Id.*, citing *Baucum*, 866 S.W.2d at 866.

Other jurisdictions have developed similar jurisprudence. *See, e.g., Commercial*

*Union Insurance Company v. Adams*, 281 F.Supp. 860 (N.D. Ind. 1964)(duty to defend terminated when policy limits tendered into registry of court under policy provision similar to the one in this case); *Abstract & Title Guaranty Company, Inc. v. Chicago Insurance Company*, 2006WL134860 (S.D. Ind. May 12, 2006), affirmed 489 F.3d 808 (7th Cir. 2007)(holding that duty to defend ends with payment of policy limits into registry of court); *Zurich Insurance Company v. Raymark Industries, Inc.*, 514 N.E.2d 150 (Ill. 1987)(duty to defend ends with exhaustion of indemnity limits); *Country Mutual Insurance Company v. Anderson*, 628 N.E.2d 499 (Ill. Ct. App. 1994)(same); *General Casualty Company of Wisconsin v. Whipple*, 328 F.2d 353 (7th Cir. 1964)(duty to defend ends with payment of full policy limits into registry of court); and *Denham v. LaSalle-Madison Hotel Company*, 168 F.2d 576 (7th Cir. 1948), *cert. den.* 69 S.Ct. 167 (1948) (duty to defend ends when liability limits have been exhausted).

In this case, Canal has paid its undisputed maximum limits of liability into the registry of this court and those funds have now been paid out to the claimants pursuant to an agreement among the claimants. The court finds that there is no just reason, after considering the policy language at issue under Texas law, not to find that Canal's duty to defend in this case has terminated.

The Schultz claimants, as the only ones to object to Canal's motion, respond by asserting that the Motor Vehicle Carrier Act endorsement attached to the subject Policy limits the exclusions that may be used by Canal or other insurance companies pursuant to the Motor Vehicle Carrier Act 1980. Specifically, the claimants contend that the endorsement modifies the policy and limits the exclusions or language limiting the exclusions or placing limits on the defense that may be contained in the policy by

substituting the language contained in the endorsement for the language in the policy and substitutes language in the endorsement for the exclusions or limitations on the defense that may be set out in the policy. Thus, according to the claimants, the Motor Vehicle Carrier Act endorsement does not make any provision for limiting the defense and specifically does not authorize Canal to terminate its defense of its insureds, Mike Cox d/b/a Cox Cattle Company and Rodney Brown, after paying the undisputed limits of the policy.

Canal responds to this argument by pointing out that the exhibit attached to the claimant's response and referred to as the Motor Vehicle Carrier Act Endorsement is actually a Form "F" controlled by state law, not federal law. Canal further points out that the MCS-90 Endorsement previously referenced is the one promulgated pursuant to regulations governed by the Motor Vehicle Carrier Act of 1980.

The Form "F" Endorsement referred to by the claimants is limited by its very terms to instances where the state commission has jurisdiction over the mode of transportation. *See T.H.E. Ins. Co. v. Larsen Intermodal Services,* 242 F.3d 667 (5th Cir. 2001). The endorsement provides:

> The certification of the policy, as proof of financial responsibility under the provisions of and State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby, provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except by reason of the obligations assumed in making such certification.

The evidence shows that the transportation on the date of the accident was

interstate in nature and no state commission would have jurisdiction. Further, the Form F attached shows clearly that the Canal Policy was not filed with Mississippi as proof of financial responsibility. Thus, the claimants' reliance on Mississippi law which they insist enlarges the obligation of Canal's duty to defend, is misplaced. *See Occidental Fire and Casualty Co. of North Carolina v. Bankers and Shippers Insurance Co. of New York*, 564 F.Supp. 1501 (W.D. Va. 1983); *Foster v. Commercial Standard Ins. Co. of Fort Worth, Tex.*, 121 F.2d 117 (10th Cir. 1941); *Hawkeye Casualty Co. v. Halferty*, 131 F.2d 294 (8th Cir. 1942), *cert. den.* 318 U.S. 758 (1942); and *Simon v. American Casualty Co. of Reading, Pa.*, 146 F.2d 208 (4th Cir. 1945).

Regardless of the foregoing inapplicability of it under the facts of this case, Form F accomplishes its purpose by reading out only those clauses of the policy that would limit the ability of a third party victim to recover for his loss. *See Carolina Cas. Ins. Co. v. Underwriters Ins. Co.*, 569 F.2d 304 (5th Cir. 1978). That is not the case here and Form F, even if applicable, would have no effect on these proceedings.

IT IS THEREFORE ORDERED AND ADJUDGED that the Motion for Summary Judgment **[#110]** filed by the plaintiff, Canal Indemnity Company is granted and this action is dismissed with prejudice.

IT IS FURTHER ORDERED AND ADJUDGED that Canal Indemnity Company is fully and finally discharged from all further liability under it Basic Automobile Liability Policy No. L045430 with Mike Cox d/b/a Cox Cattle Co., including the duty to defend any action that has been or may be brought against any of its insured or alleged insureds, including Mike Cox d/b/a Cox Cattle and/or Rodney Brown, as a result of the July 20, 2006 accident.

IT IS FURTHER ORDERED AND ADJUDGED any other pending motion is denied as moot.  A separate judgment shall be entered herein in accordance with Rule 58, Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED this the 30th day of October, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE